IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RYAN PATRICK NICHOLL, *Pro Se* | : | |
| Plaintiff, | : | |
| v. | : | |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, | : | CIVIL ACTION NO. 1:16-cv-01350-AT |
| Defendant. | : | |

## ORDER

Plaintiff, a student at Kennesaw State University, filed this *pro se* Complaint[1] against the Board of Regents of the University System of Georgia (hereinafter referred to as "the University" or "the Board of Regents") challenging the University's mandatory meal plan as improper and unlawful under both state and federal legal principles. The case is before the Court on Defendant's Motion to Dismiss [Doc. 11].

---

[1] Plaintiff filed his original Complaint on April 26, 2016 and Defendant filed a Motion to Dismiss on June 7, 2016. After Plaintiff filed an Amended Complaint on June 13, 2016, Defendant withdrew its motion and subsequently filed a Motion to Dismiss the Amended Complaint.

I.  **SUMMARY OF PLAINTIFF'S ALLEGATIONS**[2]

Kennesaw State University ("KSU") charged Plaintiff $630 for meal plans he did not want for the 2015-2016 academic year.  (*See generally,* Am. Compl.) Plaintiff was charged $475 for the Fall 2015 term on August 13, 2015, and $160 for the Spring 2016 term on January 7, 2016.   (*See id.* ¶ 3.)

Plaintiff alleges that he did not agree to a mandatory meal plan.  Instead, he alleges that: (a) during registration the only indication "was that students 'may' be charged a meal plan," (b) "posting a policy about which students will be charged a meal plan contract" on the website did not constitute "adequate notice," and (c) "the terms of the registration agreement did not specify that the Plaintiff 'would' be bound by such terms."[3]   (*See id.* ¶¶ 5-6.)   According to Plaintiff, he discovered on KSU's website "at least one 'meal plan contract'" that contained an "individual signature line."  (*Id.* ¶ 5.)   Plaintiff alleges he never signed a meal plan contract, and did not otherwise agree to the terms and conditions of the separate meal plan contract.  (*Id.*)  He therefore asserts that "the registration agreement terms relating to the Mandatory Meal Plans are

---

[2] Plaintiff's Complaint, as amended, does not contain much in the way of contextual facts or background, i.e. the Complaint does not actually allege that Plaintiff was a student enrolled Kennesaw State University.  Thus, the following summary is not a statement of the actual facts, but is a summary based on the Court's effort to draw reasonable inferences from Plaintiff's allegations in an effort to fill in the factual gaps.

[3] According to the information regarding meal plans on KSU's website — http://dining.kennesawstateauxiliary.com/meal-plans/faq/ — students are automatically assigned a meal plan, although the plans differ based on the circumstances (i.e. whether the student is a first year living in campus residential housing or is a commuter).  The meal plan requirement was recommended by the Student Government Association (SGA) in order to "enhance the quality of campus life and increase student involvement on campus" and to support the various dining halls on campus. Certain students are automatically exempt from the required meal plans if they take little or no courses on campus.

illusory and [] invalid" and that the contract unilaterally dictates the terms of the agreement without the consent of the parties. (*Id.* ¶ 6.) Plaintiff further alleges that he did not "obtain any meals" during either of the meal plan terms, "making the contract if it did exist void due to unconscionably [sic] and failure of consideration." (*Id.* ¶ 7.)

According to the Complaint, in order to obtain a "Meal Plan Exemption for 2015-2016," Plaintiff was required to submit the necessary forms "no later than August 3rd 2015 by 5:00pm," and that the failure to submit the forms by the deadline results in a "failed appeal." (*Id.* ¶ 4.) Plaintiff contested the charge for the Fall 2015 term meal plan and requested that the meal plan be removed and submitted his petition via email on August 20, 2015. (*See id.*) According to Plaintiff, KSU allows for certain meal plan exemptions due to medical or financial reasons, but does not allow students to opt out of meal plans for legal reasons. (*See id.*) Plaintiff alleges that he explained the basis for his objection to the meal plan, through various administrative channels, to KSU through its Assistant General Counsel, Jermaine Johnson. (*See id.*) Mr. Johnson refused Plaintiff's demand for an administrative hearing and rejected his request for an exemption from the meal plan. (*See id.*)

Plaintiff contends that "the Mandatory Meal Plans are illegal because the 'opt-out' deadline ends before eligibility for the mandatory meal plan is determined, violating Due Process under both the Georgia Constitution and U.S. Constitution. The Plaintiff was deprived of property without Due Process of law,

3

and without proper notice and opportunity." (*Id.* ¶ 8.) Plaintiff further alleges that the administrative remedies provided were "exhausted, futile and inadequate" because the opt-out procedure does not provide an option to opt-out for legal reasons and do not afford Plaintiff a right to a jury trial. (*See id.* ¶ 9.) Also according to the Complaint, the Mandatory Meal Plans are not authorized by the Board of Regents "because the implementation does not meet the definition of a 'food service fee'" under the Board of Regents Policy Manual § 7-3-2-2 and "Plaintiff is not aware of any authorization of the fees as a 'mandatory fee.'" (*Id.* ¶ 10.)

Plaintiff asserts that the Mandatory Meal Plans "are in general restraint of trade and an illegal tying arrangement" in violation of O.C.G.A. § 13-8-2, 15 U.S.C. § 1-7 *et seq.*, and 15 U.S.C. § 12-27 *et seq.*, because they "tie unrelated services of food and education together" and "affect a substantial amount of commerce." (*Id.* ¶ 11.) Plaintiff further asserts that Defendant attempts to force students to purchase a Mandatory Meal Plan to promote interests of the Defendant's contractors and affiliates in an anti-competitive manner, and that "on information and belief" the Board of Regents "consists of active market participants and is not actively supervised by the State." (*Id.*)

Plaintiff asserts that "any regulation requiring students to purchase specific meal plans burdens interstate commerce." (*Id.* ¶ 12.) He contends that contrary to Defendant's requirement that he purchase meals from Defendant and its contractors, "Plaintiff wishes to purchase his meals from out of state." (*Id.*) He

4

further alleges that by compelling "individuals to purchase, from particular in-state corporations, life essential products" the State "in effect discriminates against out-of-state corporations which provide the same services. (*Id.*)

Plaintiff asserts that "[i]f the Mandatory Meal Plans *were* a tax, they would be an unconstitutional one under the Due Process, Equal Protection, First Amendment and Fifth Amendment." (*Id.* ¶ 13.)

Plaintiff asserts, generally:

> The denial of higher education without agreeing to the terms of a contract is a sufficient coercive factor to implicate the fundamental rights under both the State and Federal Constitution . . . By requiring potential practitioners of specific occupations to obtain degrees from accredited institutions in order to practice such occupations, the Government requires individuals to accept one of a number of certain contracts in order to legally practice in the fields of such regulated occupations . . . When the very institutions that we call 'public' schools fail to provide contracts which respect the fundamental rights of individuals, it becomes questionable whether it is possible for a person to obtain licensing in a regulated occupational field without surrendering their constitutional rights. The government must provide avenues for professional licensing that do not require agreement to contracts which infringe the fundamental rights of the people.

(*Id.* ¶ 14.)

Plaintiff asserts that the choice of culinary provider "is an unenumerated right" under both the Georgia Constitution and the U.S. Constitution. (*Id.* ¶ 15.)

Plaintiff asserts that requiring students to purchase meal plans violates the freedom of assembly because (a) it coerces students to assemble in specific areas, (b) only certain persons may assemble at the eateries, and (c) meals are a traditional time in which persons assemble. (*See id.* ¶ 16.)

Plaintiff asserts that the Mandatory Meal Plans are "illegal because students are illegally searched upon entry to the eateries without reasonable suspicion or probable cause" when students are required to scan a meal plan card to an automated system that tracks the activities of the students. Plaintiff contends this "is a form of mass surveillance" in violation of the Fourth and Fifth Amendments and the Equal Protection Clause.

Plaintiff filed his suit against the Board of Regents because Kennesaw State University is not a distinct legal entity from the Board of Regents. He seeks an injunction against the Board of Regents from enforcing any Mandatory Meal Plan against Plaintiff in the future, treble damages of $1,905 pursuant to Federal Antitrust Law, and an award of court costs.

## II.  STANDARD OF REVIEW ON A MOTION TO DISMISS

A complaint is subject to dismissal under Rule 12(b)(6) where it appears that the facts alleged fail to state a "plausible" claim for relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007); Fed. R. Civ. P. 12(b)(6). A claim is plausible when the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Twombly*, 550 U.S. at 556. A plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

6

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 555, 570; *Iqbal*, 556 U.S. at 678. Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. (citing Fed. Rule Civ. Proc. 8(a)(2)).

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678-79. In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. 678-79).

The Court recognizes that Plaintiff is appearing *pro se*. Thus, his Complaint is more leniently construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, nothing in that leniency excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1998), cert. denied, 493 U.S. 863 (1989). Nor does this leniency require or allow courts "to

rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

### III. DISCUSSION

Defendant seeks to dismiss Plaintiff's claims either as barred, in whole or in part, by sovereign immunity under the Eleventh Amendment, or for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. Although the Eleventh Amendment does not expressly bar suits against a State by its own citizens, the Supreme Court has consistently held that an unconsenting State's protection from suit extends to those brought in federal courts by the State's own citizens. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990). And it is clear that the Eleventh Amendment proscribes suits against a State's agencies or departments as the defendant. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.* (citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933) ("Expressly applying to suits in

equity as well as at law, the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State")).  Thus, actions for injunctive relief against a State or its instrumentality are barred by the Eleventh Amendment.  *Harden*, 760 F.2d at 1163.

It is well-settled that "[t]he Board of Regents is the state agency vested with the governance, control, and management of the University System of Georgia. Ga. Const. Art. VIII, Sec. IV, Par. I(b)."  *Olvera v. University System of Georgia's Bd. of Regents*, 782 S.E.2d 436, 437-38 (Ga. 2016) (quoting *Wilson v. Board of Regents of the University System of Georgia*, 419 S.E.2d 916 (Ga. 1992)).  It is therefore settled that the Board "is an agency of the State to which sovereign immunity applies."  *Id.*; *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012).

Sovereign immunity gives way only under two circumstances. *See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). First, Congress may authorize suit under its power to enforce the Fourteenth Amendment, and second, a State may waive its sovereign immunity by consenting to suit.  *Id.* The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Id.* at 675–76 (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985)).  A State does not consent to suit in federal court merely by consenting to suit in its own courts, by stating its intention "to sue and be sued," or by authorizing suits against it "in any court of competent jurisdiction."  *Id.* (citing cases); *Barnes v.*

9

*Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012) ("A waiver of Eleventh Amendment immunity must specifically permit suits in federal court."); *Jagnandan v. Giles*, 538 F.2d 1166, 1172 (5th Cir. 1976) ("The [Eleventh] amendment has been judicially construed to bar federal jurisdiction over suits brought against a state by its own citizens, despite the absence of language to that effect."). Neither circumstance applies in this case.

While Georgia has waived its sovereign immunity for actions sounding in contract in its own state courts, Georgia has not waived its Eleventh Amendment immunity from suit in federal court. *Barnes*, 669 F.3d at 1308 (stating that Ga. Const. art. 1, § 2, para. IX(c) waives the state's sovereign immunity for actions *ex contractu* and O.C.G.A. § 50–21–1(a) waives the state's sovereign immunity for breach of contract claims, but neither provision expressly consents to suits in federal court). Thus, to the extent Plaintiff seeks to assert contract based claims against the Board of Regents, the Eleventh Amendment prohibits the assertion of such claims in this Court. *Id.*

Plaintiff's alleged claims against the Board of Regents under the Federal anti-trust laws are barred by sovereign immunity. *See Parker v. Brown*, 317 U.S. 341, 350-352 (1943) (establishing the general proposition that states acting in their sovereign capacities are exempt from federal antitrust laws); *Saenz v. Univ. Interscholastic League*, 487 F.2d 1026, 1028 (5th Cir. 1973)[4] (reasoning that the

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

University Interscholastic League and its officials, as part of the Extension Division of the University of Texas, were entitled to antitrust immunity as the state acting in its sovereign capacity) (quoting *Alabama Power Co. v. Alabama Elec. Co-op., Inc.*, 394 F.2d 672, 675 (5th Cir. 1968) ("[I]t is settled that neither the Sherman Act nor the Clayton Act was intended to authorize restraint of governmental action."); *see also Pharmaceutical and Diagnostic Services, Inc. v. University of Utah*, 801 F. Supp. 508, 513-15 (D. Utah 1990) (holding that State University and Board of Regents were immune from suit alleging antitrust violations as a result of University's operation of radiopharmacy).

The only other federal statute at issue here is 42 U.S.C. § 1983 — the vehicle through which Plaintiff seeks to assert his constitutional claims. Section 1983 does not abrogate state sovereign immunity to authorize suits against a state. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-67 (1989); Thus, Plaintiff's alleged Due Process, Equal Protection, First Amendment and Fifth Amendment challenges are barred by sovereign immunity under the Eleventh Amendment. See *Harden*, 760 F.2d at 1162-64 (holding that suit by tenured faculty member against State university alleging that his termination violated his right to free speech and due process was barred by sovereign immunity); *Jagnandan v. Giles*, 538 F. 2d 1166, 1184-85 (5th Cir. 1976) (holding that Mississippi had not waived its sovereign immunity under the Eleventh Amendment with respect to Mississippi State University to suit challenging constitutionality of state statute classifying all alien

students, even Mississippi residents, as non residents for tuition and fee purposes as violation of Fourteenth Amendment); *Duke v. Hamil*, 997 F. Supp. 2d 1291 (N.D. Ga. 2014) (holding that Board of Regents of University System of Georgia was entitled to Eleventh Amendment immunity from suit brought pursuant to § 1983 for alleged retaliatory demotion in violation of First Amendment).

### IV.   CONCLUSION

While Plaintiff provided a host of detailed arguments why he believes the Eleventh Amendment should not bar his claims, governing federal law is well settled as to the Eleventh Amended defenses presented here.  For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 11] Plaintiff's claims in this Court as barred by the Eleventh Amendment.  Plaintiff's claims based on state law are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** this 30th day of November, 2016.

_____
**Amy Totenberg**
**United States District Judge**