IN THE UNITED STATES COURT OF APPEALS

FOR THE 11TH CIRCUIT

---

No. 16-17739-GG



---

D.C. Docket No. 1:16-cv-01350-AT

RYAN NICHOLL,

Plaintiff - Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,

Defendant - Appellee,

---

Appeal from the United States District Court
for the Northern District of Georgia

---

Appellant's Principal Brief

---

RYAN PATRICK NICHOLL
950 HUDSON RD SE APT 202
MARIETTA GA 30060
Telephone: (678)-358-7765
Plaintiff - Appellant, Pro Se

i

**Certificate of Interested Persons**

Comes now, Appellant Ryan Nicholl represented *pro se*, to declare pursuant to 11th Circuit Rule 26.1-1 that the following list:

- Board of Regents of the University System of Georgia

- Kennesaw State University

- Nicholl, Ryan

comprises a complete list of all legal persons, legal entities, corporations, political subdivisions, agencies, etc. of whom an interest is known by Appellant. Furthermore, Appellant certifies that while the list is the complete list of entities etc. known by Appellant to have an interest in this above styled action, the Appellant lacks the knowledge to determine if additional entities etc. may have an interest in this litigation because no discovery was conducted in the District Court with regard to the above styled action.

**Statement on Oral Argument**

The Appellant requests oral argument.  This brief raises important questions of law and requests clarification of existing law, which should be answered with a published opinion after oral argument.  It would also ensure the Appellant is treated fairly and not largely ignored the same way as the Appellant was mostly ignored by the District Court, most likely by its law clerks who seemingly found it unnecessary to read the Appellant's briefs throughly because the Appellant is *pro se*.

## Contents

1 Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . .   vi

2 Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . .   vii

3 Statement of the Issues . . . . . . . . . . . . . . . . . . . . .   1

4 Statement of the Case . . . . . . . . . . . . . . . . . . . . . .   1

5 Summary of the Argument . . . . . . . . . . . . . . . . . . . .   3

6 Standard of Review . . . . . . . . . . . . . . . . . . . . . . .   5

7 Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

   7.1  Error of the District Court in general . . . . . . . . . . . . .   6

      7.1.1  First Error . . . . . . . . . . . . . . . . . . . . . . .   6

      7.1.2  Second Error . . . . . . . . . . . . . . . . . . . . . .   7

      7.1.3  Third Error . . . . . . . . . . . . . . . . . . . . . . .   8

      7.1.4  Fourth Error . . . . . . . . . . . . . . . . . . . . . .   8

   7.2  Kennesaw State University is not sovereign . . . . . . . . . . .   9

   7.3  Board of Regents is not sovereign . . . . . . . . . . . . . . .   12

   7.4  The "State" for purposes of sovereign immunity is defined narrowly   13

   7.5  Relation of state-action immunity and sovereign immunity . . . . .   13

   7.6  Sovereign immunity and contracts . . . . . . . . . . . . . . .   16

   7.7  State dignity and treasury not implicated by this action . . . . . .   17

   7.8  Dismissal based on sovereign immunity is premature because it
requires fact-finding . . . . . . . . . . . . . . . . . . . .   18

7.9 Damages against sovereign not barred when money "recovered" rather than "taken" . . . . . . . . . . . . . . . . . . . . . . . . .  18

7.10 Even if sovereign immunity does apply, immunity does not block *in rem* action . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

7.11 Due Process claim . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

7.12 Appellant should be allowed to amend . . . . . . . . . . . . . . .  21

7.13 Anticipatory Argument . . . . . . . . . . . . . . . . . . . . . . . . .  22

8 Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

9 Requested Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

## 1. Table of Citations

*Alexander v. Fulton County*, 207 F.3d 1303 (11th Cir. 2000)

*Alvarez v. Hill*, 667 F.3d 1061 (9th Cir. 2012)

*Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012)

*City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365 (1991)

*Ex Parte State of New York, No. 1*, 256 U.S. 490 (1921)

*Fed. Trade Comm'n v. Phoebe Putney Health Sys., Inc.*, 568 U.S. ___ (2013)

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987)

*Goss v. Lopez*, 419 U.S. 565 (1975)

*Harry v. Marchant*, 237 F.3d 1315 (11th Cir. 2001)

*Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30 (1994)

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)

*James Carroll Pillow, Jr., Michael R. Seward v. Bechtel Construction, Inc.*, 201 F.3d 1348 (11th Cir. 2000)

*Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995)

*Lincoln County v. Luning*, 133 U.S. 529 (1890)

*Mt. Healthy City Board Of Ed. V. Doyle*, (1977)

*North Carolina State Bd. of Dental Examiners v. FTC*, 574 U.S. ___ (2015)

*Northern Ins. Co. of N. Y. v. Chatham County*, 547 U.S. 189 (2006)

*Parker v. Brown*, 317 U.S. 341 (1943)

*Tamiami Partners, Ltd. v. Miccosukee Tribe*, 177 F.3d 1212 (11th Cir. 1999)

*United States v. Approximately 64,695 Pounds of Shark Fins* (520 F.3d 976)

*United States v. Article Consisting of 50,000 Cardboard Boxes More or Less, Each Containing One Pair of Clacker Balls*, 413 F. Supp. 1281 (D. Wisc. 1976)

*United States v. Lee*, 106 U.S. 196 (1882)

*United States v. $124,700 in U.S. Currency*, 05-3295 (8th Cir. 2006)

*Ward v. Love County*, 253 U.S. 17 (1920)

## 2. Statement of Jurisdiction

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291. This case involves Federal Questions.

## 3. Statement of the Issues

With regard to this dispute,

1. Did the District Court error by not fully explaining its ruling?

2. Did the District Court error by considering issues beyond the pleadings when ruling upon a motion to dismiss?

3. Is Kennesaw State University via the Board entitled to sovereign immunity?

4. Is Kennesaw State University via the Board entitled to state-action immunity?

5. Can a State court hear antitrust claims when the Takings Clause or Due Process Clause is implicated?

6. Did the District Court abuse its discretion by denying leave to amend?

7. Can the Clerk enter a judgement?

## 4. Statement of the Case

Kennesaw State University employees appear to have engaged in conflict of interests and then created a mandatory meal plan that violated Board of Regents policy without obtaining approval from the Board of Regents.

Ryan Nicholl, the Appellant, was charged for mandatory meal plans to which Nicholl did not agree. Nicholl never received proper notice of those meal plans,

1

such as the conditions under which a mandatory meal plan would be established, nor did Nicholl intend to agree to them.

The charges for the mandatory meal plans were taken out of Federal Financial Aid money awarded to Nicholl and possibly from a payment intended only to cover tuition, Nicholl did not voluntarily provide payment for the mandatory meal plans, or knowingly express approval towards such payments out of Federal Financial Aid awards.

Because Nicholl believed that no contract existed with regard to the mandatory meal plans, and that such mandatory meal plans violated various federal laws, Nicholl attempted to dispute such charges. Attempts to resolve the dispute without litigation were unsuccessful.

Nicholl filed a lawsuit in the United States District Court for the Northern District of Georgia. Because the Board designated that Kennesaw State University was not a separate entity, Nicholl named the Board as the Defendant. The complaint was amended. (NDGA 1:16-cv-01350-AT, Document 8). The Board moved to dismiss (NDGA 1:16-cv-01350-AT, Document 11), and Nicholl filed an opposition (NDGA 1:16-cv-01350-AT, Document 12), in which Nicholl claimed that the Board was not a sovereign entity for the purpose this dispute. The District Court entered an order dismissing the complaint. (NDGA 1:16-cv-01350-AT, Document 19). The Clerk entered a second judgment (NDGA 1:16-cv-01350-AT, Document 20). Nicholl moved to vacate and for leave to amend the complaint. (NDGA 1:16-cv-01350-AT, Document 21). The District Court denied leave to amend the complaint. (NDGA 1:16-cv-01350-AT, Document 22). The Plaintiff

filed a notice of appeal from the grant of the motion to dismiss and denial of leave to amend within 30 days of the motion to vacate and for leave to amend. (NDGA 1:16-cv-01350-AT, Document 23) The Plaintiff filed a notice that no transcript would be ordered. (NDGA 1:16-cv-01350-AT, Document 29)

The District Court ruled only upon sovereign immunity and possibly state-action immunity, finding all claims barred by sovereign immunity in Federal Court.

## 5. Summary of the Argument

Appellant believes that sovereign immunity is unavailable as a defense to this action and that the District Court erred by assuming that the Board had sovereign immunity. Local governments are not entitled to sovereign immunity. According to the U.S. Supreme Court local school boards are not entitled to sovereign immunity. Appellant asks this Court to rule consistently with the logic of that U.S. Supreme Court precedent, and to hold that state universities are not entitled to sovereign immunity, or at least to delay such determination until there has been an opportunity for fact finding. Neither Kennesaw State University nor the Board of Regents can invoke sovereign immunity at the stage of a motion to dismiss because the conclusion of fact, if the facts are viewed in the light most favorable to the non-movant (the Appellant), would be that neither was acting as an "arm of the state" which may invoke sovereign immunity. Sovereign immunity of entities other than the State itself so named is a fact-based inquiry which should not be the subject of a dismissal unless there is no possibility that the Court could have

3

jurisdiction over the matter.

The District Court erred when it presumed that the Board of Regents was entitled to sovereign immunity without invoking the tests for granting sovereign immunity. The District Court misunderstood this Court's rulings on the matter and ruled erroneously upon the matter. The District Court also erred when it misapplied this Court's and the Supreme Court's precedents. The District Court erred when it gave prevailing weight to any precedent of this Court and of Courts of other circuits that conflicts with the Supreme Court precedents the Appellant cited. This Court ought to rule that the District Court should give priority to U.S. Supreme Court precedents. Furthermore, this Court should require the District Court to explain why this case is distinguished from U.S. Supreme Court precedents if the District Court believes those precedents do not apply, instead of simply adopting the Boards arguments without actually addressing the Appellant's arguments about sovereign immunity in any meaningful fashion.

The District Court erred when it *sua sponte* introduced fact-finding in an order on a motion to dismiss, visiting the website of Kennesaw State University and making conclusions of fact based upon this. Kennesaw State University could have changed its website (and in fact did) between the time the mandatory meal plans were charged and the time the judicial order was released. It is well established that upon a motion to dismiss the facts should be construed most favorably in favor of the non-movant, and that the claims must be assumed to be true no matter how skeptical the Court may be. In particular, the District Court should not do its own research upon the facts without presenting the Appellant the opportunity

4

for cross examination of the evidence, and to present evidence impeaching such conclusions.

The District Court erred if it ruled upon the state-action immunity claim after finding that it did not have jurisdiction over the case due to sovereign immunity. State-action immunity is a merits question, not a jurisdictional question like sovereign immunity. The Appellant argues that state-action immunity does not apply but that the district Court erred by ruling upon it, because if sovereign immunity does apply (which the Appellant believes it does not) then the district court lacked jurisdiction to rule upon the question of state-action immunity.

## 6. Standard of Review

"[This Court] review[s] the dismissal of an action for lack of subject matter jurisdiction de novo."[1] Questions of sovereign immunity are reviewed de novo.[2] "[O]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."[3] Denial of leave to amend is reviewed for abuse of discretion. Abuse of discretion occurs if the District Court applies an incorrect legal standard.[4] A motion to dismiss is reviewed de novo. The court accepts all allegations of the complaint as true and construes the facts in the light most favorable to the

---

[1] See e.g. *James Carroll Pillow, Jr., Michael R. Seward v. Bechtel Construction, Inc.*, 201 F.3d 1348 (11th Cir. 2000).
[2] See *Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012); *Tamiami Partners, Ltd. v. Miccosukee Tribe*, 177 F.3d 1212, 1224 (11th Cir. 1999).
[3] *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995).
[4] See *Alexander v. Fulton County*, 207 F.3d 1303, 1326 (11th Cir. 2000).

non-movant.[5]

## 7. Argument

### 7.1. Error of the District Court in general

#### 7.1.1   First Error

The District Court stated that:

> "It is therefore settled that the Board is an agency of the State to which
> sovereign immunity applies." [internal quotation marks and citation
> omitted] (Doc. 19)

Which is erroneous for the reasons which were elaborated in the opposition
arguments (NDGA 1:16-cv-01350-AT, Document 12), and which are further
elaborated and clarified in this brief.  Further, Appellant request clarification of
existing law on this issue.

In *Barnes v.  Zaccari*, which the District Court relied upon to reach its
conclusion, this Court noted that:

> "**The parties agree** the Board is an "arm of the state" usually entitled
> to Eleventh Amendment immunity.  But Barnes contends, and the
> district court ruled, that Georgia has waived its Eleventh Amendment
> immunity from suit in federal court for breach of contract claims.
> We disagree." [internal citations omitted, emphasis added] (*Barnes
> v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012))

---

[5]See *Harry v. Marchant*, 237 F.3d 1315, 1317 (11th Cir. 2001).

6

It is therefore clear that *Barnes v. Zaccari* does not establish whether or not the Board is entitled to sovereign immunity, because that issue was not before the Court of Appeals for the 11th Circuit. The District Court therefore erred when it relied upon this case to determine that the Board was entitled to sovereign immunity. The Appellant relied upon the premise that the Board does not have any sovereign immunity with regard to this dispute, not that the Board waived its sovereign immunity. This conclusion was wrong for the reasons that will be elaborated in this brief. Thus, while the conclusions that the Board did not voluntarily waive sovereign immunity were correct, the District Court erred when it determined that the Board had any sovereign immunity to begin with.

## 7.1.2   Second Error

The District Court stated that:

> "Plaintiff's alleged claims against the Board of Regents under the Federal anti-trust laws are barred by sovereign immunity." (NDGA 1:16-cv-01350-AT, Document 19)

Citing *Parker v. Brown*. This is erroneous. Technically, *Parker v. Brown* provides state-action immunity, not sovereign immunity . The Appellant also cited numerous cases showing why state-action immunity and sovereign immunity did not apply (Although admittedly the Appellant did refer to state-action immunity as sovereign immunity, the same reasoning applies to both.)

7

### 7.1.3  Third Error

The District Court stated:

> "The only other federal statute at issue here is 42 U.S.C. § 1983 —
> the vehicle through which Plaintiff seeks to assert his constitutional
> claims." (NDGA 1:16-cv-01350-AT, Document 19)

This is an *exceptionally* interesting error, given that the Appellant did not
even mention 42 U.S.C. § 1983 anywhere in the amended complaint (NDGA
1:16-cv-01350-AT, Document 8) or opposition arguments. One must wonder what
the District Court Judge (or her law clerks) was actually reading (and not reading)
when the District Court drafted the order. The Appellant does not oppose the
inclusion of a 42 U.S.C. § 1983 claim, but this should alert this Court to the
incredibly cursory review the District Court conducted of the arguments submitted
by the Appellant.

### 7.1.4  Fourth Error

The District Court Clerk entered a "CLERK'S JUDGMENT in favor of
Defendant against Plaintiff." (NDGA 1:16-cv-01350-AT, Docket) See NDGA
1:16-cv-01350-AT, Document 20. The Appellant believes this is an error because
only the Judge, not the Court Clerks, should be able to exercise Article III powers,
therefore such order should have been signed by the Judge, not the Clerk.

8

## 7.2. Kennesaw State University is not sovereign

While the States in general have sovereign immunity, sovereign immunity is not unlimited. Sovereign immunity only applies to the State itself, not subdivisions of the State. The U.S. Supreme Court has held that "[t]he Eleventh Amendment to the Constitution does not operate to prevent counties in a state from being sued in a federal Court."[6] The U.S. Supreme Court has also held that a local school board was not entitled to sovereign immunity.[7] This Court should extend that logic to state universities, which should not be considered sovereign. Considering local universities to be sovereign, but not local school boards, would be strange and inconsistent, especially given that local universities are often run more like a business or corporation than a local school board. In the opinion of the Appellant, it would be very bizarre to find that counties and municipalities are not "arms of the state" and do not have sovereign immunity, but that a university is an "arm of the state" that has sovereign immunity. While many professors and school administrators may see themselves as sovereign rulers of the student body deserving of sovereign immunity, the Appellant hopes that this Court will be more skeptical.

In 2005, the U.S. Supreme Court held that "[a]n entity that does not qualify as an arm of the State for Eleventh Amendment purposes cannot assert sovereign

---

[6]See *Lincoln County v. Luning*, 133 U.S. 529 (1890).

[7]"[T]he record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State. We therefore hold that it was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts." (*Mt. Healthy City Board Of Ed. V. Doyle*, (1977))

9

immunity as a defense to [...] suit." [internal quotation marks omitted] (*Northern Ins. Co. of N. Y. v. Chatham County*, 547 U.S. 189 (2006)). And the U.S. Supreme Court also held that "[s]overeign immunity does not extend to counties, [...] even when they exercise a slice of state power[.]" [internal quotation marks omitted] (*Id.*). "[The U.S. Supreme Court] has repeatedly refused to extend sovereign immunity to counties." (*Id.*) The mere fact that the Board may be "exercising a slice of state power" does not entitle it to sovereign immunity, rather this Court should turn to a fact-based inquiry into whether or not the University and the Board were acting as a sovereign.

The U.S. Supreme Court has overruled this Court's precedents that provide an expansive reading of sovereign immunity, and has instead adopted a more limited view of sovereign immunity. The U.S. Supreme Court held that "[b]ecause the County has failed to demonstrate that it was **acting as** an arm of the State when it operated the [...] Bridge, the County is not entitled to immunity from Northern's suit. Accordingly, the judgment of the Court of Appeals [for the 11th Circuit] is reversed." [emphasis added] (*Northern Ins. Co. of N. Y. v. Chatham County*, 547 U.S. 189 (2006)). Based upon this, we can infer that the "arm of the state" test is not based upon whether the entity itself generally is an "arm of the state", but whether the individual action upon which the entity is subject to suit for is an act as an arm of the state. There mere exercise of any governmental power is obviously insufficient to raise a claim of sovereign immunity, otherwise counties and municipalities would be entitled to sovereign immunity, as they "exercise a slice of state power".

10

It can be inferred that except when the state itself is sued by name, the question of sovereign immunity is based upon whether the acts leading to the claim are made within sovereign capacity. An entity, other than the State itself sued by name (i.e. "Georgia"), must be acting as an "arm of the state" in order to claim sovereign immunity.

Sovereign immunity extends to the State itself, and to "arms of the state". But local subdivisions of government, such as counties, municipalities, and Kennesaw State University, are not "arms of the state" to which sovereign immunity applies. The Board of Regents designates that Kennesaw State University is to be part of the same legal entity as the Board of Regents; that the Board of Regents is named as a Defendant should not alter the constitutional limitations on sovereign immunity. It is the "essential nature and effect of the proceeding" which is controlling for the purpose of sovereign immunity, not the name of the party (the Board).[8] Even if the Board is named as a Defendant, the action in effect is against Kennesaw State University, rather than the Board itself, so even if the Board is sovereign, Kennesaw State University should not be, and therefore sovereign immunity should not apply even if the Board was an "arm of the state".

---

[8]The U.S. Supreme Court held that "Whether a suit in admiralty is a suit against a state is determined, not by the names of the titular parties, but by the essential nature and effect of the proceeding as it appears from the entire record." (*Ex Parte State of New York, No. 1*, 256 U.S. 490 (1921)). I assume that a suit at law or equity should be governed by the same standard because of Supreme Court's holding that "Immunity in admiralty, like other sovereign immunity, is simply an application of the fundamental rule that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given." [internal quotation marks omitted] (*Northern Ins. Co. of N. Y. v. Chatham County*, 547 U.S. 189 (2006)).

### 7.3. Board of Regents is not sovereign

To the Appellant, it appears that the Board of Regents is not a sovereign entity which can exercise sovereign immunity. Not every entity that is geographically distributed statewide is an "arm of the state" to which sovereign immunity applies. If that were the case, then every statewide corporation would be entitled to sovereign immunity whenever it "exercised a slice of state power". The Board of Regents appears to exercise a very high degree of independence from the state, more than most counties. As such, it is not an "arm of the state", even though it has geographic distribution statewide. The Georgia Constitution provides:

> "(c) All appropriations made for the use of any or all institutions in the university system shall be paid to the board of regents in a lump sum, with the power and authority in said board to allocate and distribute the same among the institutions under its control in such way and manner and in such amounts as will further an efficient and economical administration of the university system" (Constitution of the U.S. State of Georgia, Article VIII. Section IV. (c))

The Board of Regents has a great deal of independence from the State. Although it is a governmental entity, so are counties and municipalities. The U.S. State of Georgia decided to make the Board of Regents independent of the State, rather than merely an agency which the State exercises control over. The control the State has over the Board of Regents is actually less control than the State has over counties and municipalities. This Court should not determine that the Board of

12

Regents is an "arm of the state" merely because it is geographically statewide, when it does not act as an "arm of the state".

An "arm of the state" should carry out functions of the state's designation, rather than exercise independent discretion. The Board of Regents, when carrying out university functions, is not simply an agency that acts as an "arm of the state" by enforcing state laws, but rather acts independently.

It is clear that if the facts are viewed in the light most favorable to the non-movant, the Appellant, then the motion to dismiss should not be granted.

## 7.4. The "State" for purposes of sovereign immunity is defined narrowly

The "State" for purposes of sovereign immunity does not include the entire State government, but rather, includes only the highest levels of the three main branches of government: the legislative, the executive, and the judicial. Other parts of government, such as counties, municipalities, and other semi-independent entities, are not "the State".

## 7.5. Relation of state-action immunity and sovereign immunity

In *Parker*, the U.S. Supreme Court held that when an entity acts in the capacity of a sovereign that is immune to antitrust law under the "state-action immunity" doctrine. State-action immunity is a result of the holding in *Parker v. Brown* that the Sherman act was not intended to apply to states in *sovereign* capacity, not a restriction on the authority of the Federal Courts with regard to jurisdiction.[9]

---

[9]"The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state.

We can infer that when a an entity is acting as an "arm of the state" that such act would implicitly be "state action". Therefore we can infer that an act which is not "state-action" cannot be an act as an "arm of the state", since every act as an "arm of the state" would be "state action". Therefore, we can infer that an act which is not "state-action" cannot be protected by sovereign immunity, since sovereign immunity requires the act be an act as an "arm of the state".

State action immunity from the antitrust acts is disfavored, and should not be assumed by default. The U.S. Supreme Court held that "given the fundamental national values of free enterprise and economic competition that are embodied in the federal antitrust laws, state-action immunity is disfavored, much as are repeals by implication. [...] Consistent with this preference, we recognize state-action immunity only when it is clear that the challenged anticompetitive conduct is undertaken pursuant to a regulatory scheme that is the State's own." (*Fed. Trade Comm'n v. Phoebe Putney Health Sys., Inc.*, 568 U.S. ___ (2013)) In 2015, the U.S. Supreme Court held that the formal designation given by States to regulators was not the deciding factor for state-action immunity.[10]

---

The Act is applicable to "persons," including corporations[...], and it authorizes suits under it by persons and corporations[...]. [...] There is no suggestion of a purpose to restrain state action in the Act's legislative history. The sponsor of the bill which was ultimately enacted as the Sherman Act declared that it prevented only "business combinations."" (*Parker v. Brown*, 317 U.S. 341 (1943) at 317 U.S. 351)

[10]"The Board's argument that entities designated by the States as agencies are exempt from Midcal's second requirement cannot be reconciled with the Court's repeated conclusion that the need for supervision turns **not on the formal designation given by States to regulators** but on the risk that active market participants will pursue private interests in restraining trade." [emphasis added]

14

State-action immunity requires a few elements. First, there must be "clearly and affirmatively expressed state policy".[11] Given that I pleaded that the Board did not authorize the mandatory meal plans, this cannot possibly be "clearly and affirmatively expressed state policy", this therefore settles the question. But even if it did not, where the regulator comprises "active market participants" in the regulated market the immunity does not obtain unless active supervision is also present.[12]

From this, I infer that the "arm of the state" test does not turn on the formal legal entity status of Kennesaw State University as part of the Board of Regents, but rather on the *de facto* status of Kennesaw State University as a separate entity.

Given that I pleaded that the charges were not authorized either by the Board of Regents nor by the State of Georgia, it is clear that such charges were not "state-action" and neither was Kennesaw State University acting as an "arm of the state". Even if they *were* authorized, that defense should be estopped because Kennesaw State University did not provide any evidence of such authorization in response to the open records act noted in the complaint.

---

(*North Carolina State Bd. of Dental Examiners v. FTC*, 574 U.S. ___ (2015)).

[11]"Under this Court's state-action immunity doctrine, when a local governmental entity acts pursuant to a clearly articulated and affirmatively expressed state policy to displace competition, it is exempt from scrutiny under the federal antitrust laws." (*Fed. Trade Comm'n v. Phoebe Putney Health Sys., Inc.*, 568 U.S. ___ (2013))

[12]See *Fed. Trade Comm'n v. Phoebe Putney Health Sys., Inc.*, 568 U.S. ___ (2013).

### 7.6. Sovereign immunity and contracts

While State law only waives sovereign immunity for *ex contractu* suit in state courts, this does not mean that the Board ever had any sovereign immunity which needed to be waived. The U.S Supreme Court has held that despite the 11th Amendment, "[t]he power to contract with citizens of other states implies liability to suit by citizens of other states, and no statute limitation of suability can defeat a jurisdiction given by the Constitution."[13]

Assuming, *in arguendo*, that the *Lincoln County* ruling does not apply to the States themselves, then perhaps it may be interpreted as a means to distinguish whether an entity is an "arm of the state". Perhaps an entity is not an "arm of the state" if that entity has a power to contract in its own name, rather than that of the State. Since the Board of Regents would be a distinct entity from the State, then the Board of Regents would not be an "arm of the state" for this purpose.

Further, state-action immunity is not implicated when a contract is involved.[14]

---

[13]See e.g. (*Lincoln County v. Luning*, 133 U.S. 529 (1890), U.S. Supreme Court.)

[14]"The rationale of Parker was that, in light of our national commitment to federalism, the general language of the Sherman Act should not be interpreted to prohibit anticompetitive actions by the States in their governmental capacities as sovereign regulators. The sentences from the opinion quoted above simply clarify that this immunity does not necessarily obtain where the State acts not in a regulatory capacity, but as a commercial participant in a given market." (*City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365 (1991))

16

## 7.7. State dignity and treasury not implicated by this action

The U.S. Supreme Court has held that "[w]hen indicators of immunity point in different directions, the Court is guided primarily by the Eleventh Amendment's twin reasons for being: the States' dignity and their financial solvency."[15] Because the action arises out of acts by Kennesaw State University that were neither authorized by the Board of Regents nor the State of Georgia the dignity of the State of Georgia is not implicated by this action. Furthermore, due to the separation between the Board of Regents and the State this aspect further suggests that there should be no reason to provide immunity under the dignity factor.

Under the treasury factor, when a subdivision of government, such as Kennesaw State University, has an independent ability to repay debts, sovereign immunity is not implicated.[16] Kennesaw State University appears to fund itself primarily by collecting student fees. Damages here would not be paid out of the State treasury, because ultimately the money in dispute originated from the Appellant and/or Federal Financial Aid, although Appellant concedes that this interpretation would bar punitive damages if it is the sole basis to reinstate the claims.

[15]See *Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30 (1994).

[16]"The Port Authority, however, is financially self-sufficient: it generates its own revenues and pays its own debts. Where, as here, the States are neither legally nor practically obligated to pay the entity's debts, the Eleventh Amendment's core concern is not implicated." (*Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30 (1994))

### 7.8. Dismissal based on sovereign immunity is premature because it requires fact-finding

Investigation of the state treasury element of sovereign immunity would require fact-finding. Therefore, on a motion to dismiss interpreting the facts in the light most favorable to the Appellant, we should assume Kennesaw State University is financially self-sufficient because this is the light most favorable to the Appellant and no fact-finding regarding the financial self sufficiency of Kennesaw State University has been conducted in the District Court.

### 7.9. Damages against sovereign not barred when money "recovered" rather than "taken"

Although as a general rule damages against the State are barred, there are limitations to this rule. We must consider whether requested relief would transfer ownership of an amount of money or rather requires it to return money that it never lawfully acquired ownership of. When a political subdivision acquires money unlawfully, it remains obligated to return that money, even if it was paid to the state treasury.[17] [18]

---

[17]"The fact that part of the money, after collection, was paid over by the county to the state and other municipalities, and the absence of a state statute making the county liable for taxes so paid, did not alter the county's obligation to restore the full sums to the allottees." (*Ward v. Love County*, 253 U.S. 17 (1920))

[18]"The Solicitor General urges that the prohibitory nature of the Fifth Amendment, combined with principles of sovereign immunity, establishes that the Amendment itself is only a limitation on the power of the Government to act, not a remedial provision. The cases cited in the text, we think, refute the argument of the United States that "the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government." Though

### 7.10. Even if sovereign immunity does apply, immunity does not block *in rem* action

*In rem* jurisdiction gives the Courts jurisdiction over things to decide who owns them.[19] In rem jurisdiction is not affected by sovereign immunity.[20] Money is not exempt from in rem jurisdiction.[21]

 *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), which the district Court cites, creates a limited exception to *in rem* jurisdiction of the federal courts when a sovereign is involved. The gist of this exception is that although an *in rem* action can be brought to dispute title to property, it cannot dispute sovereign title to lands and waters.[22]

---

arising in various factual and jurisdictional settings, these cases make clear that it is the Constitution that dictates the remedy for interference with property rights amounting to a taking." (*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987))

[19]See, e.g. *United States v. Approximately 64,695 Pounds of Shark Fins* (520 F.3d 976), *United States v. Article Consisting of 50,000 Cardboard Boxes More or Less, Each Containing One Pair of Clacker Balls*, 413 F. Supp. 1281 (D. Wisc. 1976)

[20]"[The doctrine that, except where Congress has provided, the United States cannot be sued] has no application to officers and agents of the United States who, when as such holding for public uses possession of property, are sued therefor by a person claiming to be the owner thereof or entitled thereto, but the lawfulness of that possession and the right or title of the United States to the property may, by a court of competent jurisdiction, be the subject matter of inquiry and adjudged accordingly." (*United States v. Lee*, 106 U.S. 196 (1882))

[21]See e.g. *United States of America v. $124,700 in U.S. Currency*, 05-3295 (8th Cir. 2006)

[22]In support of this conclusion, carefully reading Idaho suggests that the Supreme Court intended to distinguish Idaho from previous precedents addressing the intersection of *in rem* jurisdiction and sovereign immunity rather than overrule them outright. E.g. "[T]his case is unusual in that the Tribe's suit is the functional

19

## 7.11. Due Process claim

Students are entitled to Due Process rights.[23] The State governments should not be able to steal property and then claim sovereign immunity as a defense. Imagine if the State government decided to empty your bank account without any due process for no reason, and then claimed sovereign immunity protected them from having to return the money. That is essentially what the Board has done, except that the amount of money in controversy is less. The Appellant has a Due Process and First Amendment right to contest the legality of the taking (under the right to petition the government for redress of grievances).

The Fourteenth Amendment causes the other amendments to be binding on the States. Important to this aspect is that while sovereign immunity protects the state governments in general, it ought to be an inferior consideration to the Due Process and Takings clauses. Even if the Board would normally be entitled to sovereign immunity, a takings or due process claim should prevail over sovereign immunity since the 14th Amendment was ratified after the 11th Amendment. If

---

equivalent of a quiet title action implicating special sovereignty interests. [...] [T]he requested relief would divest the State of its control over lands underlying navigable waters, which have historically been considered uniquely sovereign lands[.]" [internal quotation marks omitted] (*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997))

[23] "(a) Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred, and must recognize a student's legitimate entitlement to a public education as a property interest that is protected by the Due Process Clause, and that may not be taken away for misconduct without observing minimum procedures required by that Clause." (*Goss v. Lopez*, 419 U.S. 565 (1975))

only congress is given the authority to enforce the 14th amendment, then some citizens will be denied equal protection of the law.

The Supreme Court has determined that allowing state courts to hear constitutional claims is a sufficient reconciliation of the two rules, but that argument fails in the present case which is distinguished by the intersection of antitrust law and the due process and takings clauses. This is because Georgia state courts do not have jurisdiction to hear antitrust claims. Whether antitrust law applies to the acts is a question of state-action immunity, rather than sovereign immunity; sovereign immunity is only a question of whether the Plaintiff can bring the claim. Clearly state-action immunity does not apply to the Board. If we were to assume that antitrust claims were barred by sovereign immunity, and that only the Federal Government can enforce the antitrust law against a sovereign, this would deny the Appellant equal protection of the law, due process, and the right to petition the government to redress of grievances. So Instead, if we suggest that state courts have the authority to hear federal antitrust claims when the takings clause or due process clause is implicated, then this puts the state courts in the awkward position of dealing with antitrust law. At the very least, the Appellant should be allowed to bring the antitrust claims in a quiet title action to recover the funds wrongfully taken.

## 7.12. Appellant should be allowed to amend

The Appellant should be allowed to amend the complaint if it is defective. The District Court denied leave to amend the complaint. The District Court decided

that it was "futile" to amend the complaint. Whether it is "futile" to amend the complaint is a question of law that should be reviewed *de novo*.

Assuming, *in arguendo*, that the complaint is defective, Appellant could clearly correct the complaint (excluding the request for punitive damages) by altering the style of the action to an *in rem* or "quiet title" action, even if sovereign immunity would otherwise bar the action.

Furthermore, because Appellant is *pro se*, the District Court could have interpreted Appellant's compatible claims as a quiet title action, so it was unnecessary to dismiss them.

Even if sovereign immunity barred this action because it was not styled correctly it is not "futile" to amend the complaint. Even if sovereign immunity did bar the complaint, a simple amendment to the complaint changing the way the Defendant is named could salvage the complaint.

There would be little, if any point, of requiring the Appellant to refile essentially the same case with essentially the same issues instead of allowing leave to amend, unless the aim of the Court is to force the Appellant to pay additional filing fees. Therefore the Appellant should be allowed to amend the complaint if sovereign immunity applies.

## 7.13. Anticipatory Argument

In anticipation of any argument that the antitrust acts do not provide a cause of action for recovery against Kennesaw State University, I need note only that my recovery could be wrought not through a cause of action provided by the

22

antitrust act itself but by the due process clause of the constitution directly. Even if congress provides no mechanism for relief against a University, where the government takes money, an individual has the right to contest the legality of that taking under the due process clause to determine if it was void *ab inito*. The due process clause gives the Appellant the right to recovery funds if they were taken illegally. Thus, except insofar as punitive damages are concerned, we only need to determine whether or not Kennesaw State University's mandatory meal plan was legal, not whether or not the antitrust act confers jurisdiction, since congress cannot eliminate due process jurisdiction by statute. (Of course, the result could be different if the Due Process and Takings clauses were not implicated.)

## 8. Conclusion

The Appellant believes that the Appellant has a cause of action and that the case is not barred by sovereign immunity. Even if the Appellant failed to state a cause of action, it is clearly not "futile" to amend the complaint.

## 9. Requested Relief

The Appellant requests that this Court reverse and remand this case for further proceedings consistent with the arguments in this brief, or any other just and proper holdings. Furthermore, the Appellant requests that this Court assign costs to the Appellee.

Respectfully submitted,

_Ryan T. Nicholl_                _2017-2-1_
**Signature**                         **Date**

RYAN PATRICK NICHOLL
950 HUDSON RD SE APT 202
MARIETTA GA 30060
Telephone: (678)-358-7765

                              Plaintiff - Appellant, Pro Se

24

IN THE UNITED STATES COURT OF APPEALS

FOR THE 11TH CIRCUIT

---

No. 16-17739-GG

---

D.C. Docket No. 1:16-cv-01350-AT

RYAN NICHOLL,

Plaintiff - Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,

Defendant - Appellee,

---

Appeal from the United States District Court
for the Northern District of Georgia

---

Certification of service

---

Upon filing this document I certify that I have served the Board of Regents of the University System of Georgia with "Appellant's Principal Brief" and this "Certification of Service" by mailing copies of all aforementioned documents with the United States Postal Service to Defendant's registered counsel, addressed as:

Brooke E. Heinz
40 Capitol Square
S.W. Atlanta, Georgia 30334-1300

with proper postage attached; and that such service was completed on the date of signature.

1

Respectfully submitted,

*Signature*              *Date*

2017-2-1

RYAN PATRICK NICHOLL
950 HUDSON RD SE APT 202
MARIETTA GA 30060
Telephone: (678)-358-7765

Plaintiff - Appellant, Pro Se

2