IN THE UNITED STATES COURT OF APPEALS

FOR THE 11TH CIRCUIT

———————————————

No. 16-17739-GG

———————————————

D.C. Docket No. 0F:16-cv-01350-AT

RYAN NICHOLL,

                                                          Plaintiff - Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,

                                                          Defendant - Appellee,

———————————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————————

Appellant's Reply Brief

———————————————

RYAN PATRICK NICHOLL
950 HUDSON RD SE APT 202
MARIETTA GA 30060
Telephone: (678)-358-7765
                Plaintiff - Appellant, Pro Se


Original
Original

i

## Certificate of Interested Persons

Comes now, Appellant Ryan Nicholl represented *pro se*, to declare pursuant to 11th Circuit Rule 26.1-1 that the following list:

- Board of Regents of the University System of Georgia

- Kennesaw State University

- Nicholl, Ryan

comprises a complete list of all legal persons, legal entities, corporations, political subdivisions, agencies, etc. of whom an interest is known by Appellant. Furthermore, Appellant certifies that while the list is the complete list of entities etc. known by Appellant to have an interest in this above styled action, the Appellant lacks the knowledge to determine if additional entities etc. may have an interest in this litigation because no discovery was conducted in the District Court with regard to the above styled action.

## Statement on Oral Argument

The Appellant requests oral argument. This brief raises important questions of law and requests clarification of existing law, which should be answered with a published opinion after oral argument. It would also ensure the Appellant is treated fairly.

# Contents

1  Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

2  Reply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

# 1. Table of Citations

- BoR § 7.3.2.2

- Doc. 12

- *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995)

- *United States v. American Ry. Exp. Co.*, 265 U.S. 425 (1924)

- *Zwickler v. Koota*, 389 U.S. 241 (1967)

## 2. Reply

See Appellant's Principal Brief for citations other than impeachment citations.

Appellee improperly raises several arguments in Appellee's response. The argument "In the Alternative, Plaintiff Fails to State A Federal Anti-Trust Claim Upon Which Relief Can Be Granted" is improperly raised. It is settled law that "a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought there by the appeal of the adverse party. [...] [T]he appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below."[1] While the District Court did reiterate the requirements for failure to state a claim, it did not issue any ruling on the merits (other than the merits of state action immunity, which it interpreted as a jurisdictional question), finding instead all claims barred by sovereign immunity. An argument that the the District Court should have dismissed the petition as meritless should have been raised in a cross-appeal instead of a responsive brief. The Appellee's argument that the District Court should have dismissed the action for failure to state a claim is therefore forfeited because it was improperly raised in a responsive briefing instead of a cross appeal. It should be noted that the District Court did not rule for *or* against Appellant on this issue, it did not rule at all, there is therefore no possibility of error on the question the Appellee presents. If sovereign immunity

---

[1] *United States v. American Ry. Exp. Co.*, 265 U.S. 425 (1924)

1

does not apply the case should be remanded for a new ruling. The consequences of ruling or not ruling upon this issue go far beyond the case being dismissed or not dismissed, but are critical due to the different ways in which *res judicta* would apply to a merits question versus a jurisdictional one, a dismissal on the merits would prevent the usage of the official capacity exception and for a new *in rem* action, whereas a jurisdictional dismissal (as here) would not. Appellant addressed this issue throughly in the Appellant's response (Doc. 12) and it would not make sense for this court to pass upon this issue when the District Court issued no ruling on the subject.

Appellee makes several legal and factual errors in Appellee's responsive brief. First, the Appellee made the apparently false statement that "Additionally, the Board of Regents was acting in a regulatory capacity when implementing the mandatory meal plan.". The Appellant pleaded that there was no information that the Appellant was able to find that authorized the Mandatory Meal Plans. If there is any such document by the Board authorizing such plans, the Appellee should produce it. The Appellee did not produce any evidence that the Mandatory Meal Plans were authorized by the Board of Regents in response to the Open Records Act request noted in the complaint. Appellant cannot prove the non-existence of a document, so the burden ought to be on the Appellee to produce it.

Second, Appellee contends that "Even if the Board of Regents were not entitled to ipso facto sovereign immunity, they were acting pursuant to clearly articulated and affirmatively expressed state policy when it implemented mandatory meal plans". This statement is indefensible, Appellant explicitly

2

pleaded that the Mandatory Meal Plans did not meet the definition of a BoR § 7.3.2.2 "food service fee" because they were mandatory and therefore they are "mandatory fees" rather than "food service fees". Because "elect" requires that the fee be optional, the mandatory meal plan would classify as a "mandatory fee", not a "food service fee", and therefore is not authorized by BoR § 7.3.2.2. Kennesaw State University cannot impose an *ad hoc* mandatory fee without approval from the Board of Regents. While mandatory meal plan fees are contemplated, we cannot presume that the Board intended to allow the specific exercise of this anticompetitive conduct; if that were so the Board would have adopted a policy that allowed mandatory meal plans in general, instead of requiring that all mandatory fees be approved individually. Even if that were the case, the Board cannot authorize anticompetitive conduct in general, but may only authorize specific conduct with anticompetitive effects pursuant to a clearly articulated regulatory scheme. And, as here, where the Board's relevant decision makers appear to be active market participants, the "active supervision" requirement of state-action immunity is clearly not met. Whereas here, the mandatory meal plan was implemented by the Kennesaw State University level government without approval from the Board of Regents board members. Further, as a factual matter, there exists evidence that the implementation of the food service fee was done without authorization of the Board *de facto*. While Kennesaw State University may theoretically be the same legal entity, in practice it operates separately as a subordinate political subdivision. The Supreme Court recently made the test for state action immunity more stringent, so the 11th Circuit ought to reconsider any

3

precedent involving the invocation of state-action immunity.

Appellee stated that "[...] Appellant voluntarily enrolled in Kennesaw State University and, in doing so, agreed to pay its tuition and fees.". This is false. The Appellant did agree to pay tuition but never expressed agreement towards the mandatory meal plans. The Appellant pleaded that there was insufficient notice of the mandatory meal plans in the registration agreement. Under Georgia contract law, the notice received by the Appellant was insufficient to form a contract, because Georgia law requires "exact terms" notice, and a general statement that a meal plan "may" be charged is not a basis for a contract under Georgia law, especially given the Appellant didn't have any way to know how expensive they would be or what circumstances a plan would be charged under given the ambiguous phrasing of "may". The payment was more than merely coercive, the Appellee did not have a chance to withhold money for the mandatory meal plans because it was taken out of financial aid awarded to Appellant. Appellee states that "Appellant fails to state what cause of action would be used to "recover" money." but this is false. Appellant stated that Appellant relied upon the Takings Clause, Just Compensation Clause, the Due Process clause, the Fourteenth Amendment, the Equal Protection Clause, and the First Amendment via what I will call the "Redress Clause", although it may not have been stated directly that these apply to an *in rem* action, they are the "subject matter" claims that apply in conjunction to all "jurisdictional" claims.

Appellee states that "Even if there were a federal question, the amount in controversy would be limited to the monies paid, and thus the amount in

4

controversy here $635.00 is well below the $75,000.00 threshold requirement to bring an action in federal court.". This is false, because only *Diversity Jurisdiction* entails a minimum monetary value. *Federal Question Jurisdiction* has no such minimum. Both antitrust law and the federal constitution present federal questions. See 28 U.S. Code § 1332, which specifies diversity jurisdiction. It does say that a $75,000.00 minimum is needed to obtain diversity jurisdiction, but see also 28 U.S. Code § 1331, which is federal question jurisdiction, which has no minimum amount in controversy. See also U.S. Constitution, and any other just and proper precedent. See also 28 U.S. Code § 1367 for supplemental jurisdiction to hear state law claims.

Appellee suggests that Appellant has raised the argument that Kennesaw State University was not sovereign for the first time, but the general claim was raised before in Doc. 12:

> "Neither was Kennesaw State University's meal plan supervised by the Board of Regents nor was the Board of Regents supervised by the State. Common law sovereign immunity only applies when the state acts in the capacity of a sovereign.
>
> [...]
>
> For example, the Board of Regents may or may not have a separate bank account from the State treasury, and Kennesaw State University may or may not have a separate bank account from the Board of Regents. If Kennesaw State University does have a separate bank

5

account from the Board of Regents then it would be quite proper for damages to be paid out of that account, even absent an antitrust/market participant waiver of sovereign immunity." (Doc. 12)

Appellant concedes that the argument about the sovereignty of Kennesaw State University was much longer and expansive in the appeal, but it was still made in general, though less elaborately. But even though the argument was short, the cases cited in the original response (Doc. 12) make the result clear in the face of this argument. Furthermore, it is established that: "[O]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."[2] Appellant is not suggesting a new claim, Appellant is simply arguing against the Appellee's claim of sovereign immunity. The "claim" raised here is by the Appellee, that sovereign immunity applies. Appellant is just arguing that sovereign immunity does not apply. Accordingly it is a new argument, not a new claim. Even if it were a new claim, where as here on a motion to dismiss it involves purely legal issues, this Court may consider it. Furthermore, the burden of establishing sovereign immunity falls upon the party claiming it.

Assuming in the alternative that Appellant did not argue before that Kennesaw State University was not an "arm of the State" this issue would not be waived because the District Court passed upon it. Sovereign immunity must be established before it can be waived. Thus, as the District Court considered whether sovereign immunity was waived, it must have considered whether or not it applied in the first

---

[2] *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995).

6

place. In other words, the District Court must have decided that Kennesaw State University and the Board were sovereign in order to reach its verdict. Therefore the issue has been "passed upon" and this court could address those arguments.

But even if the District Court did not pass upon the Appellant's arguments, the Appellee's implicit argument that the Appellant's argument is waived is waived because the Appellee did not explicitly argue that that Appellant's argument was waived.

For the first time in the response briefing, Appellee argues that several newly cited cases establish sovereign immunity of the Board. Appellant requests reconsideration of these precedents, to determine if the Supreme Court has overruled them, or if they should be overruled.

Additionally, in the alternative, given that Appellant requests the clarification, modification, and extension of existing law on this issue, it would have been pointless to raise parts of this argument in the District Court; there would be no point of asking the District Court to overrule this Court's precedents related to the Board's sovereign immunity because it is not an appellate court. Thus, the arguments for clarification and modification of existing law should not be waived even if they were not properly raised before the District Court, because it couldn't overrule any relevant precedents. Thus, this Court should allow these arguments even if they were not raised before, because it would alternatively have been pointless to raise arguments requesting modification of precedent. A ruling to the contrary would badly affect judicial economy, a District Court would have to read arguments about why 11th Circuit precedents should be overruled. The 11th

7

Circuit and District Courts would need to read arguments about why Supreme Court precedents should be overturned. Thus, in order to save judicial economy, when asking for modification of existing precedent it should not be necessary to raise the argument below.

By the interpretation of the Appellant, federal jurisdiction for a Takings Claim can be preserved by filing first in Federal Court, removing the case to State Court (not dismissing it), having the State Court decide the issue, and then returning to the Federal Court to determine if the State Court's interpretations of State law are compatible with Federal Law. See "Primacy Jurisdiction" 1:16-cv-01350-AT Doc. 12, p. 8 through 10, where it was quoted, among others:

> "In thus expanding federal judicial power. Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal form for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, [...] to guard, enforce, and protect every right granted or secured by the Constitution of the United States[.]" [internal quotations and citations omitted] (*Zwickler v. Koota*, 389 U.S. 241 (1967)).

Although the Appellant did misuse the word "waiver" in the original response, the citations that the Appellant used and the language of the arguments make clear that the Appellant was actually arguing that sovereign immunity never applied to begin with, and that waiver was unneeded because the entity being sued could not

8

claim sovereign immunity at all. When Kennesaw State University exceeds the authority granted to it by the State, it cannot be said to be operating as an "arm of the State".

The Supreme Court requires courts to look at State law, but that is only one factor to decide sovereign immunity. The state law factor weighs in favor of sovereign immunity, but it is not intended to be the exclusive consideration. Here, the extreme degree of independence of the Board and KSU, the need to ensure sovereign immunity is not extended to electorally unaccountable Boards comprised of market participants, the fact that the money does not appear to be taken from the State treasury, the fact that KSU is a *de facto* subdivision of government, having administration, multiple legislative chambers dedicated solely to KSU, formally elected "senators" solely for KSU, and the dignity factors weigh strongly in favor of not awarding the Board sovereign immunity. Appellee asks this Court to consider it sovereign even though KSU operates in practice separately from the State. This is clearly incompatible with the Supreme Court's "acting as" a sovereign requirement. Here, even if the Board was generally a state agency, it was "acting as" a political subdivision not entitled to sovereign immunity. This is not a question of nature of relief but one of the nature of the party and the nature of the claim.

The Appellee's argument that an *in rem* argument is waived because it was not raised before is deficient. Although the Appellant did not specifically mention the words "*in rem*" in the responsive argument, the District Court decided *sua sponte* without argument by any party that it was "futile" to amend the complaint. The

9

District Court did not ask for a proposed amended complaint. The District Court could have denied leave without prejudice and asked for a proposed amended complaint. It could even have made it's own motion to deny the motion to amend as "futile", but instead the District Court made a *sua sponte* determination that it was "futile" to amend the complaint in its order, despite no-one asking it to. Because appellant had no opportunity to respond to this "futile to amend" argument, given that it was raised *sua sponte* in an order, it is properly first raised on appeal that it is not futile to amend the complaint, which includes the argument that it could be amended as *in rem*. Regardless, if sovereign immunity does not apply, the case must be remanded for further proceedings, and under this circuit, it would be timely to raise that argument in a motion for reconsideration. The District Court did not thoroughly explain why sovereign immunity applied so it denies the appellant the opportunity to file a proper motion for reconsideration. Furthermore, the issue was not waived because the Appellant argued about property interests in general:

> "In this case, the Plaintiff was deprived property (the monies in the amount of the meal plans) without due process of law." (Doc. 12)

> "Furthermore, the Plaintiff has an independent property interest in his monies." (Doc. 12)

> "However, this case is inapplicable. The Plaintiff's due process rights place the burden of proof on the Defendant, because the monies were taken without due process of law. The Plaintiff should have been given

a hearing to contest the Defendant's charges, but was not." (Doc. 12)

And these *in rem* arguments simply qualify as new arguments in support of the claimed property interest. Thus, they are new or improved arguments, not a new claim. The Appellant properly claimed a property interest below. Even if they are new claims, they are purely legal claims and therefore this Court has discretion to consider them.

The argument that the Board is sovereign because it receives some of its funding from the State is ludicrous. If we accept that argument, then every citizen that receives welfare from the State is a "sovereign citizen" and cannot be sued because they have received funding from the State and therefore are sovereign. Counties may also receive funding from the State, but that does not make them sovereign. The question is not whether the State *funds* an entity, but whether the State is liable for that entity's *debts*, and there is no indication that would be the case in this instance, neither legally nor practically. The Board receives much of its funding from Federal Student Aid and much from student payments and student fees. Fact-finding is required to figure out the exact portions and determine if the Board was operating as an "arm of the State".

Appellant acknowledges that Kennesaw State University could be eliminated by the Board, but this merely means that Kennesaw State University is a political subdivision in a unitary governmental system, rather than federal. The fact that the Board employs a unitary relationship with its subdivisions rather than a federal relationship does not make them not political subdivisions. Granted, the Board could eliminate Kennesaw State University's government or even the university

entirely, but that does not change the fact that it decided to allow Kennesaw State University to operate its own sub-government. Thus it is a political subdivision not entitled to sovereign immunity.

This Court ought to hold that largely self-governing universities with university-level governments capable of passing legislation are political subdivisions, and therefore are not entitled to sovereign immunity. This Court also ought to hold that if the university is *de facto* separate then it is separate for the "acting as a sovereign" test of sovereign immunity. This Court also ought to hold that Appellee's contention that the Board is sovereign is wrong in light of more recent Supreme Court precedents, at least as applied to the present circumstances.

Constitutional rights are of the highest importance, and thus it would be a miscarriage of justice to allow the Board to steal appellant's money and get away with it. Appellant is entitled to due process of law.

Respectfully submitted,

*Ryan P. Nicholl*    2017-3-16
Signature                Date

RYAN PATRICK NICHOLL
950 HUDSON RD SE APT 202
MARIETTA GA 30060
Telephone: (678)-358-7765

   Plaintiff - Appellant, Pro Se

12

IN THE UNITED STATES COURT OF APPEALS

FOR THE 11TH CIRCUIT

No. 16-17739-GG

D.C. Docket No. 1:16-cv-01350-AT

RYAN NICHOLL,

               Plaintiff - Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,

               Defendant - Appellee,

Appeal from the United States District Court
for the Northern District of Georgia

Certification of Service

Upon filing this document I certify that I have served the Board of Regents of the University System of Georgia with "Appellant's Reply Brief" and this "Certification of Service" by mailing copies of all aforementioned documents with the United States Postal Service to Defendant's registered counsel, addressed as:

 Brooke E. Heinz
 40 Capitol Square
 S.W. Atlanta, Georgia 30334-1300

with proper postage attached; and that such service was completed on the date of signature.

1

Respectfully submitted,

*Ryan P. Nicholl*      2017-3-16
Signature                                 Date

RYAN PATRICK NICHOLL
950 HUDSON RD SE APT 202
MARIETTA GA 30060
Telephone: (678)-358-7765

                               Plaintiff - Appellant, Pro Se